**Marcinkiewicz v Flushing Hosp. Med. Ctr.**

2026 NY Slip Op 30769(U)

February 26, 2026

Supreme Court, Kings County

Docket Number: Index No. 506120/2021

Judge: Patria Frias-Colón

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                    Part 80
HON. PATRIA FRIAS-COLÓN, J.S.C.
------------------------------------------------------------------------X
Geraldine Marcinkiewicz,

                          PLAINTIFF,

              -against-

Flushing Hospital Medical Center, Martine A.
Louis, M.D., Mark M. Moradi, M.D., Hosam
Hanna, M.D., and Mai Gandhi, D.O.,

                          DEFENDANTS.
------------------------------------------------------------------------X

Index # 506120/2021
Cal. #s 6-7  Mot. Seq. #s 3-4

**DECISION/ORDER**

Recitation as per CPLR §§ 2219(a) and/or 3212(b) of papers considered on review of this motion:
NYSCEF Doc #s 74-89; 115 by Def. Moradi
NYSCEF Doc #s 90-103; 116 by Def. Flushing
NYSCEF Doc #s 106-114 by Plaintiff

Upon the foregoing cited papers and after considering oral argument on October 14, 2025, pursuant to CPLR § 3212(b), the Court issues the following Decision and Order:

- The motion for summary judgment filed by Defendant Mark M. Moradi, M.D. (Motion Sequence # 3) is GRANTED and DENIED in part. The cause of action alleging lack of informed consent is dismissed with prejudice as abandoned. The remainder of Dr. Moradi's motion is granted, except with respect to his alleged acts and omissions during the period beginning at 2:25 p.m. on November 13, 2018[1] (the time of Plaintiff's post-anesthesia admission) and 11:26 a.m. on November 16, 2018[2] (when Plaintiff was transferred to the Surgical Intensive Care Unit ("SICU") and her care was assumed by non-moving Defendant, intensivist Martine Louis, M.D. (the "post-operative/pre-SICU period")).

- The motion for summary judgment jointly filed by Defendants Flushing Hospital Medical Center ("FHMC"), Hosam Hanna, M.D., and Mai Gandhi, D.O. (collectively the "Flushing Defendants") (Motion Sequence # 4) is likewise GRANTED and DENIED in part. The lack of informed consent claim is dismissed with prejudice as abandoned. The medical malpractice claims against Drs. Hanna and Gandhi are also dismissed with prejudice. Further, FHMC may not be held vicariously liable for the alleged acts and omissions of Dr. Moradi because Plaintiff entered FHMC as his private patient. The remainder of the Flushing Defendants' motion is denied.

---

[1] NYSCEF Doc. # 96, FHMC medical records, p. 0082 ("Admission Information") reflecting Plaintiff's post-operative admission to the Post-Anesthesia Care Unit on November 13, 2018 at 1425 hours (2:25 p.m.).
[2] NYSCEF Doc. # 95, FHMC medical records, p. 0082 ("Events") indicating Plaintiff's admission to the SICU on November 16, 2018 at 1126 hours (11:26 a.m.).

[* 1]

## BACKGROUND

This medical malpractice action arose from Plaintiff's allegation that Defendants failed to timely diagnose and treat post-operative sepsis following surgery performed on November 13, 2018.[3] After completion of discovery and the filing of the note of issue, Defendant Dr. Moradi and the Flushing Defendants moved for summary judgment.[4] After oral argument on October 14, 2025, the Court reserved decision.

For clarity, the Court delineates two distinct periods of Plaintiff's care:
1. Post-operative/Pre-SICU period: from Plaintiff's post-anesthesia admission at 2:25 p.m. on November 13, 2018 through her transfer to the SICU at 11:26 a.m. on November 16, 2018.
2. SICU Period: beginning with the transfer on November 16, 2018, during which Plaintiff's care and clinical decision-making were managed exclusively by intensivist Martine A. Louis, M.D.

## STANDARD OF REVIEW

Summary judgment is a drastic remedy that should be granted only where no genuine issue of material fact exists. *Kolivas v. Kirchoff*, 14 A.D.3d 493, 493 (2d Dept. 2005). The Court's function on such a motion is issue-finding, not issue-resolution; it may not assess credibility or weigh evidence. *Laris v. City of New York*, 236 A.D.3d 637, 638 (2d Dept. 2025). Evidence must be viewed in the light most favorable to the non-moving party. *Gambarian v. Spivakov*, 241 A.D.3d 1529, 1529 (2d Dept. 2025).

The elements of medical malpractice are (1) a deviation from accepted medical practice; and (2) proof that such deviation was a proximate cause of injury. *Danziger v. Mayer*, 236 A.D.3d 755, 758 (2d Dept. 2025).

A defendant seeking summary judgment must establish, *prima facie*, either compliance with the standard of care or that any departure was not a proximate cause of the alleged injury. *Attia v. Klebanov*, 192 A.D.3d 650, 651 (2d Dept. 2021). Conclusory expert opinions that merely recount treatment and assert compliance, are insufficient. *Marsh v. City of New York*, 191 A.D.3d 973, 973-974 (2d Dept. 2021). If defendant fails to meet this burden, the motion must be denied, regardless of the sufficiency of the opposition. *Martinez v. Orange Regional Med. Ctr.*, 203 A.D.3d 910, 912-913 (2d Dept. 2022).

---

[3] NYSCEF Doc. # 1, Verified Complaint (dated March 15, 2021) ¶¶ 32-54; NYSCEF Doc. # 19, Verified Bill of Particulars as to FHMC (dated September 29, 2021) ¶¶ 1 and 4; NYSCEF Doc. # 20, Verified Bill of Particulars as to Dr. Louis (dated September 29, 2021) ¶¶ 3-4; NYSCEF Doc. # 21, Verified Bill of Particulars as to Dr. Moradi (dated September 29, 2021) ¶¶ 8-9, NYSCEF Doc. # 36, Verified Bill of Particulars as to Dr. Hanna (dated December 16, 2021) ¶¶ 1 and 4; NYSCEF Doc. # 22, Verified Bill of Particulars as to Dr. Gandhi (dated September 29, 2021) ¶¶ 1 and 4.

[4] NYSCEF Doc. #s 74 & 90. (Defendants' motions for summary judgment).

[* 2]

If defendant meets this initial burden, plaintiff must then demonstrate triable issues of fact on the elements addressed by the defendant. *Alao v. Richmond Univ. Med. Ctr.*, 213 A.D.3d 722, 723 (2d Dept. 2023). Conflicting expert opinions generally precludes summary judgment, as credibility determinations are for a jury. *Feinberg v. Feit*, 23 A.D.3d 517, 519 (2d Dept. 2005).

## DISCUSSION

### Defendant Mark M. Moradi, M.D. (Motion Sequence #3)

#### Lack of Informed Consent

Summary judgment as to Plaintiff's lack of informed consent claim against Defendant Dr. Moradi is granted as abandoned, as Plaintiff did not oppose this branch of the motion. *See Gobind v. Nercessian*, 227 A.D.3d 464, 465 (1st Dept. 2024); *Clarke v. New York City Health & Hosps.*, 210 A.D.3d 631, 633 (2d Dept. 2022).

#### Medical Malpractice:  Post-Operative/Pre-SICU Period

The branch of the motion seeking dismissal of the claims pursuant to CPLR § 3212(b), arising from Dr. Moradi's conduct during the post-operative/pre-SICU period is denied. The record, viewed in the light most favorable to Plaintiff, raises triable issues of fact as to whether Dr. Moradi failed to timely recognize and respond to escalating clinical indicators consistent with a bowel perforation, including:

1.  significant post-operative abdominal pain noted the morning of November 14 (Post-op Day 1);[5]
2.  fluid retention, which Dr. Moradi misattributed to pulmonary edema (rather than to a bowel perforation) during rounds on November 14;[6]
3.  development of skin rash and swelling of the hands documented at 12:19 p.m. on November 14;[7]
4.  recurring episodes of severe hypotension (low blood pressure), including blood pressure readings of 89/50 at 11:53 p.m. on November 14, and 85/44 at 12:23 a.m. on November 15 with low oxygen saturation of 85%;[8] and
5.  an urgent radiologist call at 8:24 a.m. on November 16 reporting increased upper-abdominal air on x-ray and recommending additional imaging to rule out intra-abdominal pathology.[9]

---

[5] NYSCEF Doc. # 107, Affirmation of Plaintiff's Expert Surgeon David A. Mayer, M.D., dated September 26, 2025, ¶ 9 (noting that "severe and immediate post-operative abdominal pain is a sign and/or symptom of bowel perforation"). Unless otherwise indicated, all references are to calendar year 2018.

[6] NYSCEF Doc. # 107, Plaintiff's Expert Surgeon's Affirmation, ¶ 21 (explaining that fluid retention may result from bowel perforation and asserting pulmonary edema was an incorrect working diagnosis under which the staff treated Plaintiff at Dr. Moradi's direction).

[7] NYSCEF Doc. # 107, Plaintiff's Expert Surgeon's Affirmation, ¶ 22 (opining that a skin rash and hand swelling may be caused by bowel perforation).

[8] NYSCEF Doc. # 107, Plaintiff's Expert Surgeon's Affirmation, ¶ 24 (addressing hypotensive episodes documented on November 14–15).

[9] NYSCEF Doc. # 96, FHMC medical records, pp. 0038-0039, Imaging Result. *See* NYSCEF Doc. #107, Plaintiff's

[* 3]

Triable issues of fact also exist as to whether, regardless of the precise etiology or anatomical location of the bowel perforation,[10] Dr. Moradi's delay in diagnosis during this post-operative/pre-SICU period caused Plaintiff unnecessary pain and suffering and necessitated corrective surgery on November 23rd.[11] *See Maynard v Mount Sinai Doctors Brooklyn Hgts.*, ___ A.D.3d ___, 2025 N.Y. Slip Op 06854, *2 (2d Dept. 2025) ("The plaintiff's expert opined that regardless of the cause of the appendicitis, the delay in diagnosis allowed the inflammation and infection to progress, resulting in a prolonged hospitalization and the formation of adhesions, among other things, which complicated her subsequent...course of medical treatment.").[12]

Plaintiff's theory that Dr. Moradi caused an intra-operative bowel perforation during the November 13th surgery is unsupported by the record and based on speculation.[13] *See Getselevich v. Ornstein*, 219 A.D.3d 1493, 1495 (2d Dept. 2023) ("The plaintiff's expert affidavit relied upon facts that were not supported by the record and, thus, was speculative, conclusory, and insufficient to defeat [defendant's] motion for summary judgment."); *Steinberg v. Lenox Hill Hosp.*, 148 A.D.3d 612, 612-613 (1st Dept. 2017) ("The [defense] expert opined [without contradiction from a qualified expert on plaintiff's side] that the objective evidence indicated that plaintiff's vision did not worsen post-[cardiac catheterization] but that even if it did, this was attributable not to the [cardiac catheterization] but to the advancement of plaintiff's preexisting glaucoma.").

---

Expert Surgeon's Affirmation, ¶ 12 (stating that the newly visualized free air, not present on the prior day's x-ray, constituted a sign of bowel perforation).

[10] Dr. Moradi's own submissions conflict as to whether the perforation arose in the gastric pylorus or the duodenum. *Compare* NYSCEF Doc. # 77, Affirmation of Allan L. Schuss, M.D., Pathologist (dated July 22, 2025) ¶ 32 (opining perforation from acute worsening of a pre-existing pylorus ulcer), *with* NYSCEF Doc. # 96, FHMC medical records, p. 0756 (Pathology Report diagnosing "Perforated Duodenal Ulcer with Acute Serositis"). *See Kleinman v. North Shore Univ. Hosp.*, 148 A.D.3d 693, 694 (2d Dept. 2017) (identifying contradictory medical records as grounds for triable issues). Regardless of the anatomical location, Plaintiff's experts do not raise a triable issue of fact as to whether the bowel perforation occurred *intraoperatively*, rather than during the *post-operative/pre-SICU period* discussed herein.

[11] *Compare* NYSCEF Doc. # 107, Plaintiff's Expert Surgeon's Affirmation, ¶ 38 (asserting that delayed diagnosis during the post-operative/pre-SICU period caused unnecessary pain and required corrective surgery on November 23), *with* NYSCEF Doc. # 78, Affirmation of Defendant's Expert Pulmonologist Michael S. Niederman, M.D. (dated July 24, 2025) ¶¶ 51, 57 (opining that Plaintiff exhibited no signs of perforation on *November 14th*" or as of *November 15th*).

[12] Dr. Moradi's counsel argues in ¶ 44 of her reply affirmation (NYSCEF Doc. # 44) that neither of plaintiff's experts states a CT scan, upright x-rays, or other diagnostic modalities performed between November 13 and November 16 would have identified a perforation. This argument misplaces the focus: the relevant inquiry concerns what actually occurred, not what hypothetical testing might have revealed. It is undisputed that no CT scan or upright x-ray was ordered during the post-operative/pre-SICU period. Given Plaintiff's documented clinical findings, Plaintiff's experts do not rely on impermissible hindsight. *Cf. Ortiz v. Wyckoff Hgts. Med. Ctr.*, 149 A.D.3d 1093, 1095 (2d Dept. 2017) (plaintiffs' expert opined that additional testing should have been done was conclusory, speculative, and based on hindsight).

[13] NYSCEF Doc. # 108, Affirmation of Plaintiff's Expert Obstetrician Richard Louis Luciani, M.D. (dated September 26, 2025), ¶ 10 (speculating that perforation may have occurred during lysis of adhesions, packing of bowel, or peritoneal entry); ¶ 13 (asserting perforation occurred intraoperatively because later corrective surgery occurred in same general area); ¶ 14 (suggesting a very small intraoperative perforation may have been missed due to field limitations or peristalsis). *Compare* Affirmation of Defendant's Expert Surgical Oncologist Yi-Chun Lee, M.D. (dated July 22, 2025), ¶¶ 41-44 (explaining that the operative field was anatomically distinct from the perforated region).

4

[* 4]

### Medical Malpractice: SICU Period

Dr. Moradi had no duty to Plaintiff during the SICU period. Plaintiff's argument that Dr. Moradi remained part of her treatment team following her transfer to the SICU[14] is unavailing. A physician's duty of care to their patients is defined by the medical functions they undertake and upon which the patient relies. *Chulla v. DiStefano*, 242 A.D.2d 657, 658 (2d Dept. 1997), *lv. dismissed* 91 N.Y.2d 921 (1998). Duty is a question of law for the courts to resolve and generally not an appropriate subject for expert opinion. *McAlwee v. Westchester Health Assoc., PLLC*, 163 A.D.3d 549, 551 (2d Dept. 2018).

It is undisputed that, once in the *SICU*, Dr. Louis exercised exclusive authority over Plaintiff's treatment[15] and that Plaintiff's daughter relied on Dr. Louis (not Dr. Moradi) for clinical decision-making.[16] *See Abruzzi v. Maller*, 221 A.D.3d 753, 756 (2d Dept. 2023) (doctor did not assume a duty of care to diagnose and treat a particular condition and patient did not rely on doctor for such care.); *Perez v. Edwards*, 107 A.D.3d 565, 566 (1st Dept 2013), *lv. denied* 22 N.Y.3d 862 (2014) (doctor entitled to rely on treatment rendered to decedent by specialists better equipped to handle decedent's condition).

### Flushing Defendants

The Flushing Defendants' motion is likewise granted in part and denied in part.

The second cause of action for lack of informed consent is dismissed with prejudice as abandoned since Plaintiff did not oppose this branch of the motion.

The medical malpractice claims against Drs. Hanna and Gandhi are also dismissed with prejudice because both acted as residents under the supervision of attending physicians: Dr. Moradi for resident Dr. Hanna and Dr. Louis for resident Dr. Gandhi. Resident doctors who follow attending doctors' directives without exercising independent medical judgment cannot be held liable, absent orders so clearly contraindicated that intervention is required. *Soto v. Andaz*, 8 A.D.3d 470, 471 (2d Dept. 2004). Here, Drs. Hanna and Gandhi satisfied their respective initial burdens by relying on the deposition testimony which demonstrated that Dr. Hanna was under the direct supervision of Dr. Moradi, whereas Dr. Gandhi was under the direct supervision of Dr. Louis at the time each cared for Plaintiff; neither Dr. Moradi nor Dr. Louis so greatly deviated from normal practice that either of them should be held liable for failing to intervene.[17] Plaintiff failed to raise triable issues to the contrary. *Nasima v. Dolen*, 149 A.D.3d 759, 760-761 (2d Dept.

---

[14] NYSCEF Doc. #107, Plaintiff's Expert Surgeon's Affirmation, ¶ 32.

[15] NYSCEF Doc. # 85, Dr. Louis's EBT, p. 145, lines 4-6 (testifying she had "the final say" regarding SICU orders); p. 146, lines 2-6 (explaining she could accept or reject consulting physicians' recommendations). Neither of Plaintiff's experts opined that Dr. Moradi should have overridden SICU orders.

[16] NYSCEF Doc. # 99, Plaintiff's Daughter's EBT, p. 18, lines 4-14, 19-21 (describing reliance on Dr. Louis and lack of criticism of other providers); p. 19, line 21-p. 20, line 4 (Dr. Moradi advised, "She's no longer my patient," upon SICU transfer).

[17] NYSCEF Doc. No. 83, Dr. Moradi's EBT, p. 41, lines 11–18; p. 81, lines 18–19; p. 104, lines 18–20 (residents acted only under his supervision); NYSCEF Doc. No. 86, Dr. Louis's EBT, p. 35, lines 1–4; p. 73, lines 5–9; NYSCEF Doc. No. 101, Dr. Hanna's EBT, pp. 37–38, 47, 54; NYSCEF Doc. No. 87, Dr. Gandhi's EBT, pp. 23, 31, 40, 42 (residents acted under attendings' supervision and did not exercise independent medical judgment).

[* 5]

2017); *Leavy v. Merriam*, 133 A.D.3d 636, 638 (2d Dept. 2015).

It is well established that a hospital may not be held vicariously liable for the malpractice of a private attending physician who is not its employee. *Tsocanos v. Zaidman*, 180 A.D.3d 841, 842 (2d Dept. 2020). "[W]hen hospital employees, such as resident physicians and nurses, have participated in the treatment of a patient, the hospital may not be held vicariously liable for resulting injuries where the hospital employees have merely carried out the private attending physician's orders." *Dupree v. Westchester County Health Care Corp.*, 164 A.D.3d 1211, 1213 (2d Dept. 2018). However, these rules shielding a hospital from liability do not apply when (among other things): (1) the staff follows orders despite knowing 'that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders; or (2) the hospital's employees have committed independent acts of negligence; or (3) the words or conduct of the hospital give rise to the appearance and belief that the physician possesses the authority to act on behalf of the hospital. *Id*.

FHMC cannot be held vicariously liable for the conduct of Dr. Moradi, a private attending physician, as none of the recognized exceptions apply here. *Mirshah v. Obedian*, 200 A.D.3d 868, 875 (2d Dept. 2021); *Tsocanos*, 180 A.D.3d 841, 841-842.

As to Dr. Louis, FHMC established *prima facie* that she was employed by a separate intensivist group (known as "TJH") and was paid by them.[18] Nevertheless, Plaintiff raised triable issues under a theory of apparent or ostensible agency because Plaintiff's medical chart did not distinguish between FHMC and TJH. *Sampson v. Contillo*, 55 A.D.3d 588, 591 (2d Dept. 2008). Although Plaintiff initially entered FHMC privately through Dr. Moradi, Dr. Louis took over Plaintiff's exclusive treatment after transfer to the SICU and, in effect, precluded Dr. Moradi and other outside attendings from overriding her "watchful waiting" course of treatment. *Sessa v. Peconic Bay Med. Ctr.*, 200 A.D.3d 1085, 1090 (2d Dept. 2021); *Weiszberger v. KCM Therapy*, 189 A.D.3d 1121, 1123 (2d Dept. 2020); *Sampson*, 55 A.D.3d at 591; *Aqui v Johnson*, 86 Misc. 3d 1221(A), 2025 N.Y. Slip Op 50997(U), *5-6 (Sup Ct, Kings County 2025).[19]

The Court considered the parties' remaining arguments, which are either moot or without merit. All relief not expressly granted herein are denied.

**CONCLUSION:**

Dr. Moradi's motion for summary judgment is granted except for Plaintiff's medical malpractice claim based on alleged acts and omissions during the post-operative/pre-SICU period, which shall proceed.

The Flushing Defendants' motion for summary judgment is granted to the extent of

---

[18] NYSCEF Doc. No. 86, Dr. Louis's EBT, p. 23, lines 21–23 (testifying she works at FHMC but is paid by "TJH," a separate intensivist group).

[19] *Schultz v. Shreedhar*, 66 A.D.3d 666 (2d Dept. 2009), cited by the Flushing Defendants, is distinguishable. There, plaintiff arrived to the emergency room at the direction of his private physician and was treated by another private attending surgeon summoned by that physician; the Court held no triable issue existed as to whether plaintiff sought treatment from the hospital rather than his private providers. *Id*. at 667.

6

[* 6]

dismissing the second cause of action for lack of informed consent. The first cause of action for medical malpractice against Drs. Hanna and Gandhi, as well as any claim seeking to hold FHMC vicariously liable for the conduct of Dr. Moradi, are both dismissed. The motion is otherwise denied.

This constitutes the Decision and Order of the Court.

Date:   February 26, 2026
        Brooklyn, New York

_____
Hon. Patria Frias-Colón, J.S.C.

7